**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | |
| Respondent, | : | NOS. 07-174, 07-683 |
| | : | |
| v. | : | |
| | : | |
| JAMAL SOLOMON, | : | CIVIL ACTION |
| | : | |
| Petitioner. | : | NO. 09-2104 |

**MEMORANDUM RE: MOTION TO VACATE, SET ASIDE,**
**OR CORRECT SENTENCE**

**Baylson, J.**                                                                                    **November 18, 2009**

Pending before the Court is Petitioner Jamal Solomon's <u>pro se</u> Habeas Corpus Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Case No. 07-184, Docket No. 24; Case No. 07-683, Docket No. 13), and the Government's Motion to Dismiss 2255 Motion (Case No. 07-184, Docket No. 27; Case No. 07-683, Docket No. 16). Solomon was convicted for various charges respecting several bank robberies in two criminal cases, which were consolidated for guilty plea and sentencing purposes.[1] For the reasons detailed below, Solomon's 2255 Motion will be denied and the Government's Motion to Dismiss will be granted.

**I.     Factual and Procedural Background**

On September 18, 2007, after pleading guilty pursuant to a plea agreement entered into on December 3, 2006, Solomon was convicted of various counts relating to eight armed or

---

[1]This is evidenced by the Government's Unopposed Motion to Transfer and Consolidate the Cases (Case No. 07-682, Docket No. 2), the plea agreement's application to the counts in both cases, (<u>see</u> Case No. 07-682, Docket No. 8, at ¶¶ 2, 5, 8), and the Judgment convicting Solomon for, and sentencing him in, both cases (Case No. 07-184, Docket No. 21; Case No. 07-683, Docket No. 12).

attempted bank robberies.[2]  On May 15, 2008, Solomon was sentenced to a total of 181 months' imprisonment, restitution in the sum of $177,979, and a special assessment fee of $1000.  (Case No. 07-184, Docket No. 21; Case No. 07-683, Docket No. 12.)  Solomon did not file a direct appeal.

## II.    The Parties' Contentions

On May 14, 2009, Solomon filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on the basis that trial counsel rendered ineffective assistance at sentencing by failing to adequately request a downward departure under United States Sentencing Guideline (U.S.S.G.) § 5K2.16 for Solomon's voluntary disclosure of his involvement in several bank robberies.  (2255 Mot. 5-6.)  The government contends that the Motion should be dismissed because Solomon waived any right to file a Section 2255 motion, and that even if he had not, his Motion should be denied because his claim is frivolous.  (Gov't Resp. 1-2)

## III.    Legal Standard

The Third Circuit has clarified that "[w]aivers of appeals, if entered into knowingly and voluntarily, are valid."  United States v. Khattak, 273 F.3d 557, 562 (3d Cir. 2001).  The Third Circuit, however, "decline[d] to adopt a blanket rule prohibiting all review of certain otherwise

---

[2]In the first case, No. 07-184, Solomon was convicted of one count of conspiring to commit armed bank robbery, in violation of 18 U.S.C. § 371 and two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d), and a related count of using and carrying a firearm, in violation of 18 U.S.C. § 924(c)(1).  (Case No. 07-184, Docket No. 21.) Upon the government's motion, an additional count of use and carrying a firearm during and in relation to aiding and abetting a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c)(1) was dismissed at sentencing (Case No. 07-184, Docket No. 22).  In the second case, No. 07-683, Solomon was convicted of one count of attempted bank robbery and three counts of bank robbery, in violation of 18 U.S.C. § 2113(a), and two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Case No. 07-683, Docket No. 12.).

valid waivers of appeals," because "[t]here may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver." Id. The Third Circuit refrained from "earmark[ing] specific situations" in which enforcing appellate waivers would amount to a "miscarriage of justice," instead directing courts in this circuit consider the following factors to determine whether "miscarriage of justice" has occurred: "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Id. at 563 (quotation marks omitted).

## IV. Discussion

The first question the Court must address is whether Solomon knowingly and voluntarily waived his right to appeal or collaterally attack his sentence under Section 2255. If the Court answers this question in the affirmative, it must then examine whether a "miscarriage of justice" invalidates the waiver.

### A. Knowing and Voluntary Waiver

Paragraph 8 of Solomon's plea agreement provides as follows:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, both with respect to the charges in the information and the charges in the indictment in Criminal No. 07-184 to which the defendant pled guilty on September 18, 2007, whether such right of appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

(Plea Agreement ¶ 8, Case No. 07-683, Docket No. 8.) The plea agreement therefore includes an express waiver of Solomon's right to appeal his sentence.

During the guilty plea colloquy on December 3, 2007, Solomon indicated that his attorney explained the terms of the plea agreement to him, that he understood the maximum statutory penalty of 130 years' imprisonment that he could receive, and that he voluntarily pleaded guilty, by way of the following exchange:

> Q:  Now, understanding what the maximum possible punishment is, do you still wish to plead guilty as to these counts?
>
> A:  Yes.
>
> Q:  Has anyone threatened you or forced you in any way so as to cause you to plead guilty to these counts?
>
> A:  No.
>
> * * *
>
> Q.  Did you sign a document called a Guilty Plea Agreement, Mr. Solomon?
>
> A:  Yes, Sir.
>
> Q.  Did you discuss it with your attorney before you signed it?
>
> A.  Yes.
>
> Q.  Did you understand it before you signed it?
>
> A.  No.  I understood it after my attorney went over it with me.
>
> Q.  Well, do you understand it now?
>
> A.  Yes, Sir.

(Plea Tr. 20:13-18, 20:25-21:12, Dec. 3, 2007.)  Later during the plea proceedings, Solomon again acknowledged that he understood that he could be sentenced to a life sentence and had not received any promises respecting sentencing, but still wished to plead guilty:

> Q.  Now, what you have to understand, Mr. Solomon, is that the Court has the power, even under the sentencing guidelines, to impose a sentence that reaches up to the maximum statutory penalty of 130 years.  Do you understand that?
>
> A.  Yes, Sir.
>
> Q.  And what you have to understand absolutely at this point is that if you plead guilty to these counts, it is possible for you to go to jail for the rest of your life without any chance of getting out of jail.  Do you understand that?
>
> A.  Yes.
>
> Q.  And understanding that, do you still wish to plead guilty as to these counts?
>
> A.  Yes.
>
> Q.  Do you understand that in the Federal system, there is no parole.  There may be some

> credit for good time served, but there is no parole system, and essentially, the way you
> have to think, I suggest, is that whatever time the Court gives you is the time that you will
> actually have to serve. Do you understand?

A.    Yes.

Q.    Understanding that, do you still wish to plead guilty as to these counts?

A.    Yes.

Q.    Has anybody, including your attorney, made any promises to you as to what your sentence
in this case will actually be?

A.    No.

(Plea Tr. 29:12-30:12.) The colloquy at the time Solomon entered his guilty plea thereby

confirms that he understood the terms of, and voluntarily signed the plea agreement (Plea Tr.

20:13-18, 20:25-21:12, & 29:12-30:12), which included an express waiver of his right to appeal

or collaterally attack his conviction or sentence under Section 2255 (Plea Agreement ¶ 8). The

Court therefore determines that the plea colloquy met the constitutional requirements for a valid

plea, see Fed. R. Crim. P. 11; Boykin v. Alabama, 395 U.S. 238 (1969), confirmed that Solomon

was competent and understood the nature of the proceeding, and thus, Solomon unequivocally

and explicitly waived his right to appeal or collaterally attack his sentence under Section 2255.

The Court now turns to the remaining question of whether there was "an error amounting to a

miscarriage of justice [that] may invalidate the waiver." Khattak, 273 F.3d at 562.

### B.    Miscarriage of Justice

Strickland v. Washington, 466 U.S. 668 (1984), "supplies the standard for addressing a

claim of ineffective assistance of counsel." United States v. Smack, 347 F.3d 533, 537 (3d Cir.

2003). Strickland first requires the defendant to "show that counsel's representation fell below an

objective standard of reasonableness" evaluated "under prevailing professional norms." 466 U.S.

at 688. Strickland then requires the defendant to show that counsel's "deficient performance

prejudiced the defense," meaning that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id. at 687, 694.

The Court turns first to the prejudice prong of the Strickland inquiry, for which "[j]udicial scrutiny . . . is highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 688-89. Solomon contends that counsel was ineffective at sentencing for not adequately requesting a downward departure under U.S.S.G. § 5K2.16 based on his voluntary disclosure of several bank robberies charged in the second criminal case, No. 07-683, while he was being investigated for involvement in the two bank robberies charged in the first case, No. 07-184. (Gov't Resp. 3.). U.S.S.G. § 5K2.16 provides as follows:

> If the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and if such offense was unlikely to have been discovered otherwise, a downward departure may be warranted. For example, a downward departure under this section might be considered where a defendant, motivated by remorse, discloses an offense that otherwise would have remained undiscovered. This provision does not apply where the motivating factor is the defendant's knowledge that discovery of the offense is likely or imminent, or where the defendant's disclosure occurs in connection with the investigation or prosecution of the defendant for related conduct.

At the sentencing proceedings, counsel orally requested a downward "variance" on the basis that Solomon "wanted to provide . . . information to the Government" on "other bank robberies for which he was not charged" and in fact "actively participated" in the Government's investigation of such robberies. (Sent'g Tr. 9:12-13, 9:18-19, May 14, 2008.) Counsel did not specify that such a variance was being requested pursuant to U.S.S.G. § 5K2.16. (Sent'g Tr. 9:10-11:20.) The district court, however, so interpreted counsel's request, and declined to do so because "the additional bank robberies, confessed to by [Solomon], were related conduct," and thus, Solomon was not "qualifie[d] for downward departure." (Sent'g Tr. 16:10-12.) The Court then stated that it had "considered the matter as if [Solomon] would have qualified and exercised

its discretion not to depart on that basis." (Sent.'g Tr. 16:15-17.) Instead, the district court decided to consider Solomon's voluntary disclosure of additional bank robberies when it considered the sentencing factors specified in 18 U.S.C. § 3553(a). (Sent'g Tr. 12:1.)

The Government, at sentencing, averred that evidence from the F.B.I. investigation indicated that when Solomon was arrested, the F.B.I. "had discovered [or] were in the process of actively discovering" five of the additional bank robberies, "because of the current investigation of [Solomon] for the spree of bank robberies," and Solomon disclosed to state authorities that he knew that the F.B.I. was looking for him. (Sent'g Tr. 14:13-14, 14:22-25.) U.S.S.G. § 5K2.16 expressly provides that a downward departure is not warranted "where the motivating factor is the defendant's knowledge that discovery of the offense is likely or imminent." Especially in light of the "strong presumption" that counsel acted reasonably and here, the Government's representations at sentencing that Solomon's facts fall squarely within the situation described in U.S.S.G. § 5K2.16 as not warranting a downward departure, the Court cannot find that counsel's failure to pursue the U.S.S.G. § 5K2.16 departure and to appeal the denial of such a departure was constitutionally prejudicial to Solomon. Because the Court finds no prejudice, Solomon has not satisfied the Strickland ineffective assistance standard and has not shown a "miscarriage of justice" invalidating his appellate waiver.

### V.    Conclusion

For the reasons detailed above, the Court will deny Solomon's 2255 Motion without a hearing and grant the Government's Motion to Dismiss. An appropriate Order follows.

O:\Criminal Cases\07-184 07-683 Solomon, US v\Solomon- Mem. Habeas Corpus 2255.wpd